

# STATE OF VERMONT
## SUPERIOR COURT—ENVIRONMENTAL DIVISION

| | | |
|---|---|---|
| Town of Hartford v. Marc & Susan Wood | } | Docket No. 1-1-11 Vtec |
| | } | (Municipal enforcement proceeding) |
| | } | |

++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

| | | |
|---|---|---|
| In re: Wood NOV & Permit Applications | } | Docket No. 138-8-10 Vtec |
| | } | (Appeal from Town of Hartford |
| | } | Zoning Bd. of Adjustment decisions) |
| | } | |

## Decision on the Merits

Marc and Susan Wood and the Town of Hartford have engaged in multiple litigations, in multiple courts, over multiple years, all with common themes: whether various plans for development of two adjoining parcels of land along Vermont Route 14 should be approved, whether the development that has occurred is in accordance with either a prior zoning permit or the applicable zoning regulations, and whether Marc Wood's development of those parcels should be regarded as violating those zoning regulations. The two above-referenced Dockets represent the parties' latest round of litigation. Each party asserts that they wish that these proceedings will bring some finality to their disputes. The Court intends to do so by rendering this Merits Decision.

These proceedings were consolidated for trial, which was conducted over three days. The Court accompanied the parties on a site visit prior to trial. William F. Ellis, Esq. assisted the Town of Hartford ("the Town") in these consolidated proceedings; Paul Gillies, Esq. assisted Marc and Susan Wood.

Docket No. 138-8-10 Vtec concerns Marc Wood's ("Appellant") appeal from decisions rejecting his two recent zoning permit applications and upholding a notice of an alleged zoning violation ("NOV") he was issued by the Town. Docket No. 1-1-11 Vtec concerns the Town's prosecution of Marc and Susan Wood based on that NOV. Given that the NOV is premised upon alleged zoning violations that have the longest history, the parties proposed and the Court agreed to first receive evidence at trial concerning the NOV and the Town's enforcement action that is the subject of Docket No. 1-1-11 Vtec and then to receive evidence concerning the two

zoning permit applications Appellant submitted for consideration that are now the subject of the combined appeal in Docket No. 138-8-10 Vtec.

Based upon the evidence admitted at trial, including that which was put into context by the site visit the Court conducted with the parties[1] and their counsel, the Court renders the following Findings of Fact and Conclusions of Law, as well as a Judgment Order that accompanies this Merits Decision.

## Findings of Fact

### I. Background: "Diner Parcel" and "Club Parcel"

1. Marc and Susan Wood ("the Woods") own two adjoining parcels of land along Vermont Route 14, which is also known as Maple Street in this section of the Town. One parcel, identified as Grand List Parcel No. 32-0005-000, is located at 1472 Maple Street and held solely in Marc Wood's name. This parcel was previously developed with a commercial building known as the Hartford Diner. We hereinafter refer to this parcel as "the Diner Parcel."

2. The Hartford Diner has not been operational for a number of years. It was significantly damaged by fire several years ago. While it has been the Woods' plan, at various times, to reconstruct and rehabilitate the Diner building as a commercial facility, the building's renovation has not been completed. Appellant now seeks authority to construct and use a single-family dwelling on the Diner Parcel.

3. Another parcel, jointly owned by the Woods, abuts the Diner Parcel. This second parcel is identified as Grand List Parcel No. 32-0004-000 and is located at 1498 Maple Street. It was previously developed with a former club facility that was previously used by the Cascadnac Grange #507. We hereinafter refer to this parcel as "the Club Parcel" and refer collectively to the Diner and Club Parcels as "the Parcels." The parties agree that the use of the club facility does not conform to the current Town of Hartford Zoning Regulations ("the Regulations"), but disagree as to whether Appellant's use of the building has continued in a sufficient enough manner so as to allow for its continued use as a lawful, pre-existing non-conformity.

4. The Woods' properties are dissected by a zoning district boundary line that is set back from the center line of Maple Street by about 100 feet. A majority of the Woods' Parcels are within the Village Business Zoning District ("VB District"). The southern portion of the Parcels

---

[1] Susan Wood did not attend the site visit or any day of trial, and it does not appear that she participated in the proceedings below.

lies in the Village Residential One Zoning District ("VR-1 District"). See Boundary Survey, admitted as Town Exhibit 3(a).

5. Both of the Woods' Parcels are bordered to the north by Vermont Route 14 (a/k/a Maple Street). When the Woods first acquired the Parcels, the grade of both Parcels was shallowest nearest to Maple Street with a steep slope falling to the Parcels' southern boundary.[2] This southern boundary runs along another Town road known as Mill Hill Road.[3] The difference in elevation of the Parcels' northern and southern boundaries is approximately forty feet, running north to south. The Parcels are not uniform rectangles; for instance, the Club Parcel has a narrow western boundary that is measured by the parties as either 48.23 feet or 65.93 feet and the Diner Parcel has an angled eastern boundary of approximately 100 feet. See Town Exhibit 3(a) and Appellant's revised site map, admitted as Appellant Exhibit L.

6. The Woods' Parcels have a limited amount of level land near Maple Street, which restricts the portion of each lot that can be effectively developed. Appellant therefore decided to attempt to increase the developable portion of both Parcels by constructing a retaining wall along, on, and over most of the southern boundary of both Parcels. Appellant also proposed to continue the wall parallel to a portion of the western boundary of the Club Parcel.

## II. Retaining Wall (Permitted and As Built)

7. The Woods first proposed the construction of a retaining wall along their southern and western boundaries sometime prior to 1999. The retaining wall, as first proposed, was to be constructed of stone, stacked to make a wall that would angle back into the Parcels. The angle of the wall was intended to provide greater strength against the wall toppling to the south, onto the adjacent Town road and private properties. See Appellant Exhibit M.

8. Appellant subsequently amended his proposal so as to use concrete slabs, instead of stone, in the wall construction. The concrete slabs were to be harvested from a nearby Interstate 91 highway bridge reconstruction project. Appellant's engineer, John B. Stevens, prepared the design for the proposed concrete slab wall. The design included the following specifications:

3. The slabs shall be reinforced concrete, obtained from a bridge rehabilitation project with a minimum thickness of 10 inches. Only slabs that have been sawn

---

[2] The photos admitted as Town Exhibits 14 and 15 show the steep slope of the Parcels as of May 22, 2000, which was after Marc Wood had begun work on the site, but before completion of the concrete slab wall, discussed below.

[3] While undisputedly a Town road, Mill Hill Road is not sufficiently developed so as to allow vehicular travel. Mill Hill Road abuts the southern boundary lines of both Parcels. At the southeast corner of Appellant's Diner Parcel, Mill Hill Road overlaps a more well-established Town road: Ferry Boat Crossing, a/k/a Albert Drive.

and have maintained their integrity during removal may be used; hammered slabs are unacceptable. The minimum width of an acceptable slab is 8 feet. . . . Any fixtures or steel shall be removed prior to slab placement if another slab will bear on it. Transverse joints shall have a width of approximately 2 to 4 inches and filled with pea gravel for drainage purposes. Transverse joints shall be offset at least 3 feet from the joint above and below. Curb or non-curb slabs may be used on the outside face of the wall and only non-curb sections may be used behind the face. Slabs shall be set level or tilted so that the end furthest from the wall face is lower than the front face.

Town Exhibit 7 at 1.

9.      The Woods' engineer's design of the proposed wall provided for a footing made of uniform concrete slabs, placed in areas excavated below the existing ground elevation, to support the base of the wall. Town Exhibit 7 at 1. The design also provided for uniform concrete slabs, stacked in such a manner so that the exterior face of the wall would slope back into the Parcels and rise at an angle from a base elevation of 365 feet to 397 feet. Id. The top western corner of the proposed wall was designed to support the foundation of a relocated building on the Club Parcel. Id. at 2.

10.      An engineer hired to assist the Town in evaluating the design of the proposed concrete slab wall opined that:

> . . . [B]ased on previous calculations and our own analysis for the previous dry-laid stone wall, we think this [concrete slab] wall probably has a reasonable Factor of Safety against failure. The Engineer of Record, John Stevens, should make certain that this is so.
>
>      At the completion of the project, the Engineer of Record should certify that the concrete slab walls were constructed in accordance with the design. Consequently, the Engineer of Record, or his representative, should monitor the construction sufficiently close so that he is willing to make that certification.

Corresp. of Carl A. Childs, P.E., dated Sept. 28, 1999, admitted as Town Exhibit 8.

11.      Based upon the Woods' engineer's design and the review of the design by the Town's engineer, the Woods' application for a zoning permit for their proposed wall was approved on October 14, 1999. That permit became known as Permit #99-1180, copies of which were admitted as Town Exhibit 5 and Appellant Exhibit I. No appeal of that permit was filed; Permit #99-1180 became final after the appeal period expired. That permit also authorized other construction on both Parcels and permitted several uses for the to-be-completed buildings. The provisions of Permit #99-1180 that authorized the construction of the proposed wall are the most material to these proceedings.

12. Permit #99-1180 specifically references the revised design for the concrete slab wall construction and notes that:

> This permit is issued on the condition that before a Certificate of Occupancy is issued the Engineer of Record, John Stevens, or his assigns, must certify that the concrete slab walls [sic] were constructed in accordance with the approved design. The applicants understand that they must make the necessary arrangements during construction to insure that the Engineer will have the necessary information to make this determination.

Town Exhibit 5 and Appellant Exhibit I at 1.

13. Appellant thereafter began collecting concrete slabs from the highway reconstruction project and storing the slabs on his parcels for later use. The Town became concerned that the slabs Appellant was stockpiling on his property did not conform to the engineering specifications Appellant submitted and that the Town relied upon in granting Permit #99-1180.

14. The Town thereafter served the Woods with a notice of violation and filed an enforcement complaint with this Court (Town of Hartford v. Marc and Susan Wood, Docket No. 72-3-00 Vtec). That enforcement complaint was consolidated with the Woods' appeal of the underlying notice of violation (In re Appeal of Marc and Susan Wood, Docket No. 91-5-00 Vtec) and a property easement dispute between the Woods and the Town that was originally filed in Windsor Superior Court (Town of Hartford v. Marc and Susan Wood, Docket No. 219-5-00 Wrcv).

15. In a decision on the consolidated litigation, this Court entered judgment for the Town and against the Woods; its judgment was based upon the following findings:

> The specifications approved in the permit for the retaining wall were a dry-laid sloping concrete slab wall, with slabs meeting the following three specifications: 1) minimum slab thickness of 10 inches; 2) only slabs that have been sawn and have maintained their integrity during removal may be used; hammered slabs are unacceptable; and 3) any steel shall be removed prior to slab placement if another slab will bear on it. . . .
>
> Defendant-Appellants have acquired slabs from highway reconstruction projects, and have stockpiled the slabs at the site. The slabs range from seven (7) to ten (10) inches in thickness. The ends of some of the slabs have been hammered rather than sawn. Steel reinforcing bars (rebar) protrude from the ends of the slabs. For these three reasons they do not meet the specifications for the slabs in the permit as approved.

Town of Hartford v. Marc and Susan Wood, Nos. 72-3-00 Vtec, 91-5-00 Vtec, and 219-5-00 Wrcv, slip op. at 2 (Vt. Envtl. Ct. Sept. 21, 2001) (Wright, J.).

16.     This Court, in its 2001 Decision and Order, further opined that the concrete slabs stockpiled on the Woods' property could possibly be "used safely" for a retaining wall, but that they must first apply for and receive an amended permit. Id. at 2–3.

17.     Following the 2001 Decision and Order, Appellant chose to construct a retaining wall along, on, and over the southern and western boundaries of the Diner and Club Parcels in a manner not in conformance with the Permit #99-1180 specifications and without first obtaining an amended or new permit to authorize the wall as actually constructed.

18.     As constructed by Appellant,[4] the retaining wall differs from the design prepared by his engineer (see Town Exhibit 7) and the specifications incorporated in Permit #99-1180 in the following material respects:

   a. The concrete slabs actually used are by no means uniform in length, width or thickness,[5] as depicted in the engineer's plan (Town Exhibit 7) and as specified in the notes on that plan. Slab thickness varies from seven to ten inches; the length and width varies as well, and many of the slabs have uneven surfaces, resulting in non-uniform stacking.

   b. The transverse (i.e., vertical) joints where the concrete slabs meet are not offset, as directed by the engineer's plans. See Town Exhibit 7 and Town photos admitted as Town Exhibits 27, 29, 31, and 32. This lack of offset compromises the physical integrity of the wall as constructed. Most all of these joints have uneven vertical surfaces.

   c. All of the vertical joints between the stacked slabs are wide and open; the space between parallel stacks of slabs is much wider than the two to four inches specified in the engineer's design, and the pea stone that the design requires to be used to fill the two- to four-inch joints does not appear to have been installed. See Town Exhibit 7.

   d. Most all of the slabs appear to have been hammered, resulting in uneven edges and joints where the slabs abut one another. Few of these vertical ends appear to have been sawn as the engineer required in his plan. See Town Exhibit 7.

   e. The stacked slabs appear to rise in a direct line, nearly ninety degrees from a level plane at the base of the wall. The wall as constructed does not respect the engineer's directive that the face of the wall be angled back into the Parcels, nor does the as-constructed wall respect the engineer's directive that the "[s]labs shall be set level or tilted so that the end furthest from the wall face is lower than the front face" of the wall. Town Exhibit 7 at 1. As a

---

[4]  Appellant testified that he performed the actual construction of the retaining wall on his property with the use of a crane and other equipment he brought on site and with the occasional help of others. Appellant admitted that he is not an engineer, by license or training, and that he did not have the prior expertise or experience to construct a wall of this height or significance.

[5]  See photo of a portion of the wall along the southern boundary, admitted as Town Exhibit 34.

consequence of how the wall was actually constructed, it appears more likely to teeter, and possibly fall, than it would be if constructed as designed.

f.  Appellant offered no certification that the hammered, rather than sawn, concrete slabs maintained their integrity after having been broken apart in such a manner.

g.  The wall as constructed is materially taller in height (by two feet on one end and ten feet on the other) than the wall as designed. The total height of the wall ranges from 10 feet to more than 30 feet.

h.  The wall construction is not yet completed, as Appellant readily admitted. Permit #99-1180 has now expired, however, and the Woods no longer have authority to build the wall as permitted.

i.  In addition to failing to complete the wall construction, the Woods have failed to provide an engineer's certification that the wall as constructed (though incomplete) was constructed in compliance with Permit #99-1180.

j.  The most credible evidence shows that Appellant constructed this wall not wholly on his land, but also on the adjoining land owned by the Town and/or others.[6] See hatched area depicted on Town Exhibit 3(a).

k.  Models prepared by Appellant and admitted into evidence of the wall as constructed (Appellant Exhibit T) and the wall as designed and approved in Permit #99-1180 (Appellant Exhibit W) fail to show that the wall was constructed as designed. They also do not support Appellant's assertion that the wall as constructed is safer and more secure than the wall as designed.

In summary, the wall as constructed by Appellant materially deviates from the wall as designed by Appellant's engineer, the design that Permit #99-1180 gave Appellant the authority to build.[7]

19.  These deviations from the engineered design create the risk that the wall as constructed is less stable than it would be if it had been constructed in accordance with Permit #99-1180. The failure of this wall, were it to occur, could seriously injure or kill people in the path of falling debris. Also, the failure of the wall could cause significant property damage to the adjoining Town properties and highways, and the adjoining private properties and homes.

---

[6]  In making this factual determination, we do not intend to over-step our jurisdictional limitations. Rather, we reach this factual conclusion only because the most credible evidence presented was that Appellant conceded that he constructed part of the wall on land owned by the Town.

[7]  This Court reached this same conclusion in In re Wood Certificate of Occupancy Request, Appellant's appeal of the Town's denial of his request for a certificate of occupancy for the wall as constructed. No. 176-8-07 Vtec, slip op. at 2 (Vt. Envtl. Ct. June 10, 2009) (Durkin, J.) (concluding that Marc Wood was not entitled to a certificate of occupancy because "[i]t is indisputable that his project had not been completed in accordance with Permit #99-1180").

7

20. Appellant has failed to acknowledge or express appreciation in these legal proceedings for the material differences between the wall as constructed and the wall as designed and permitted, and for the significant damage that could be caused by these construction deviations.

### III. The Town's Latest NOV

21. The Town served Appellant with an NOV dated March 19, 2010 ("the 2010 NOV"), giving notice of zoning violations based generally upon a failure to construct the retaining wall on his Diner and Club Parcels in conformance with Permit #99-1180. The 2010 NOV advised Appellant that he could "cure the violation" by submitting verification, within seven days, "confirming that on or before noon, May 24, 2010, [he would] submit a complete application and applicable fee to bring [his] property into compliance with Hartford's current Zoning Regulations." Thus, the Town provided Appellant with an opportunity to cure the noticed zoning violations within 66 days. A copy of the 2010 NOV was admitted as Town Exhibit 17.

22. The 2010 NOV is only addressed to Appellant, that is, to Marc Wood. There was no evidence presented that the Town addressed the 2010 NOV to Susan Wood or served her with it.

23. Appellant did not submit the verification as requested; nor did he submit a complete application to cure as requested.

24. The 2010 NOV also provided details of what Appellant's future application would need to include, at a minimum, to be considered a complete application. Appellant had, by the time he was issued the 2010 NOV, experience in what a complete zoning application must include because he had litigated that issue in two prior appeals to this Court.[8]

25. The 2010 NOV specified that if Appellant wished to submit an application to bring his wall into conformance with the applicable Regulations, Appellant must include the following documentation with his application:

   a. A slope stabilization plan prepared by a Vermont licensed engineer;

   b. Certification from a licensed engineer of the existing wall's design, structural stability, and actual construction, if Appellant intended to keep the retaining wall as constructed; and

---

[8] These prior appeals proved unsuccessful for Appellant. The Court upheld the Town of Hartford Zoning Administrator's determination that Appellant's prior applications to amend Permit #99-1180 were not complete because of his failure to submit necessary plans and certifications from a licensed engineer concerning the non-complying wall. See In re Appeal of Wood, Nos. 185-10-04 Vtec and 174-8-05 Vtec, slip op. at 14–16 (Vt. Envtl. Ct. Apr. 13, 2006) (Durkin, J.).

8

c. A site plan prepared by a Vermont licensed engineer, if site plan approval and/or conditional use approval would be necessary for Appellant's plans.

See Town Exhibit 17.

26. The 2010 NOV further advised Appellant that if he failed to cure the alleged violation, the Town would institute an enforcement action in this Court and "seek appropriate injunctive relief and fines of $100.00 per day for each day [his] violation continues."

## IV. Appellant's Response to the Town's Latest NOV

27. In response to the 2010 NOV, Appellant submitted an application to the Zoning Administrator. In the section of the application form where an applicant is asked to describe the "Type of Work Proposed," Appellant responded: "Permit to bring my property into compliance with Zoning Reg's [sic] as it pertains to the Retaining Wall." Appellant's application only listed the property at 1498 Maple Street (i.e., the Club Parcel) as the subject property. A copy of Appellant's application, dated April 2, 2010 and including supporting documentation, was admitted as Town Exhibit 18.

28. The Zoning Administrator reviewed Appellant's 2010 application and six supporting exhibits and returned the application, supporting documents, and check to Appellant with her letter of April 9, 2010, a copy of which was admitted as Town Exhibit 19. By this letter, the Zoning Administrator advised Appellant that she was returning his application and check because she had deemed Appellant's application incomplete:

a. The Zoning Administrator indicated that since the retaining wall was already partially constructed and located on both of Appellant's Maple Street properties (the Diner and Club Parcels), any application for a zoning permit for the wall must include specifications for the wall "in its entirety."

b. The Zoning Administrator further advised that if Appellant wished to resubmit his application concerning the wall as constructed, he must include with his resubmitted application the following:

i. The full application fee ($40.00);

ii. A slope stabilization plan prepared by a Vermont licensed engineer and certification from a licensed engineer of the design, structural stability, and construction of the existing wall in its entirety, as required under Regulations § 260-28(D); and

iii. A written acknowledgement from Appellant that he is financially responsible for the technical review of his application by an engineer hired by the Town (pursuant to Regulations § 260-51) and that Appellant is responsible for addressing any concerns raised in this review.

Town Exhibit 19 at 1.

9

29.     Appellant chose not to submit a complete application as the Zoning Administrator directed.  Instead, Appellant appealed the Zoning Administrator's April 9, 2010 determination that his wall renovation application was incomplete to the Town of Hartford Zoning Board of Adjustment ("the ZBA").  His appeal to the ZBA was assigned Application #12-10.

30.     Appellant also appealed the March 19, 2010 NOV to the ZBA; his NOV appeal was assigned Application #07-10.  The ZBA coordinated the proceedings for Appellant's NOV appeal with the proceedings for his appeal contending that Application #12-10 was incomplete.

## V.     Appellant's Application for Single-Family Development of the Diner Parcel

31.     Appellant also filed an application concerning further development on the Diner Parcel. A copy of this application, with supporting documents, was admitted as Town Exhibit 20.  By this application, Appellant sought authority to construct and use a single-family dwelling on the Diner Parcel.[9]

32.     The Zoning Administrator reviewed this application and determined that it was also incomplete.   By letter dated April 22, 2010 (admitted as Town Exhibit 21), the Zoning Administrator advised Appellant that she was returning his application for the following reasons:

> [Since the single-family dwelling] proposal relies on the construction of a retaining wall on [both Parcels] that was not built in conformance with the permit authorizing its construction (permit #99-1180) . . . , the application for a single-family dwelling on [the Diner Parcel] is incomplete; a zoning permit for a single-family dwelling or any other use on this lot will not be complete until such time a permit is obtained for the retaining wall.
>
> An application for a permit for the retaining wall must include:
>
> • A design of the entire existing retaining wall, including a plan accurately depicting the location and height of the wall, proposed grading related to the wall, and any other engineering and design elements that relate to the design of the wall.  In addition, the plan must accurately depict property lines, existing/proposed buildings, vehicular access points, location of the zoning district boundary line, rights-of-way, and easements.  The design and plan must be prepared and stamped by a Professional Engineer licensed by the State of Vermont.
>
> • A slope stabilization plan prepared and stamped by a Professional Engineer licensed by the State of Vermont.

---

[9]  It is unclear to the Court whether Appellant intended to remodel the former Hartford Diner building into a single-family dwelling, or if he wished to wholly remove this structure and construct a new single-family dwelling.  This factual discrepancy is immaterial to our analysis of the legal issues in these consolidated proceedings.

- Certification by a Professional Engineer on the design, structural stability, and construction of the existing retaining wall as required under section 260-28 D* of the Zoning Regulations. This certification needs to reference the plans and designs outlined above.

- Written confirmation that [Appellant] understand[s he is] responsible for the full cost of a technical review of [his] application as provided for under section 260-51 of the Zoning Regulations; that [he] must address any concerns relating to this review to the satisfaction of the town; and pay for the full expense of the review before [his] application for a zoning permit will be deemed complete.

*In Commercial Districts, retaining walls over 42 inches in height shall require the issuance of a zoning permit and certification by a professional engineer on their design, structural stability, and construction. In Residential and Rural Districts, a permit shall be required for such walls only when the distance between the wall and any boundary or easement line is less than twice the height of the wall.

See Town Exhibit 21.

33. Appellant chose not to resubmit his application in the manner directed by the Zoning Administrator. Instead, Appellant appealed the Zoning Administrator's April 22, 2010 determination to the ZBA.

34. The ZBA assigned Application #13-10 to Appellant's appeal concerning his application for authority to construct a single-family dwelling on the Diner Parcel. The ZBA coordinated the proceedings for this appeal with the proceedings for Appellant's two other appeals (those concerning the 2010 NOV and Application #12-10), conducted a duly warned hearing, and issued three separate decisions on Appellant's appeals on July 19, 2010.

35. By its July 19, 2010 decisions, the ZBA upheld the Zoning Administrator's determinations in each of the appeals. The ZBA concluded that Application #13-10 was incomplete, that there was a sufficient factual and legal basis for the 2010 NOV, and that Application #12-10 was incomplete. Appellant thereafter filed a timely appeal with this Court; his appeal of the ZBA decision on these three applications was assigned Docket No. 138-8-10 Vtec.

## VI. The Town's Enforcement Action

36. The Town initiated an enforcement action against the Woods on January 3, 2001. The Town's complaint generally recites the facts pertaining to Permit #99-1180, cited above, including Appellant's failure to construct the retaining wall as designed and permitted. The

11

Town also alleges that Appellant conducted other development on the two Maple Street Parcels without authority to do so and in violation of the applicable Regulations, including renovations and other work to the buildings on the Diner and Club Parcels.

37. It is beyond dispute that Appellant constructed the retaining wall on the Diner and Club Parcels in disregard of both the engineered design the Woods submitted in support of their original application and the permit that issued in reliance on their plans and representations. The wall as constructed materially deviates from the wall as designed and permitted in the manner detailed in our Findings ¶¶ 18(a) through (k), above.

38. The Town's basic premise that Appellant failed to construct the retaining wall in the manner it was designed and permitted was established by the facts presented at trial and supported by the following prior determinations of this Court:

    a. Town of Hartford v. Marc and Susan Wood, Nos. 72-3-00 Vtec, 91-5-00 Vtec, and 219-5-00 Wrcv, slip op. at 2 (Vt. Envtl. Ct. Sept. 21, 2001) (Wright, J.) (concluding that concrete slabs stockpiled on site deviated from those required by the approved plans in three material ways: (1) slab thickness; (2) slabs had been hammered rather than sawn and their integrity was not certified; and (3) steel rebars protruded from the ends of the slabs), aff'd on other grounds, No. 2001-473 (Vt. May 29, 2002) (unpublished mem.).

    b. In re Appeal of Wood, Nos. 185-10-04 Vtec and 174-8-05 Vtec, slip op. at 1, 9–11, 13–16 (Vt. Envtl. Ct. Apr. 13, 2006) (Durkin, J.) (concluding that Marc Wood's second and third application to either amend Permit #99-1180 or seek a new permit for the retaining wall as constructed were incomplete because the revised wall design was required to be completed by a licensed engineer).

    c. Town of Hartford v. Wood, Nos. 72-3-00 Vtec, 121-7-03 Vtec, 185-10-04 Vtec, 81-4-07 Vtec, and 176-8-07 Vtec, slip op. at 14–15 (Vt. Envtl. Ct. Mar. 6, 2008) (Durkin, J.) (concluding that Permit #99-1180 had expired and that Marc Wood's fifth application to amend Permit #99-1180 to authorize the retaining wall as constructed was deficient because his site plans were deficient).

    d. In re Wood Certificate of Occupancy, No. 176-8-07 Vtec, slip op. at 2 (Vt. Envtl. Ct. June 10, 2009) (Durkin, J.) (concluding that Marc Wood's material deviations from the permitted design when constructing his retaining wall foreclosed his claims to a certificate of occupancy for the wall).

39. Appellant failed to "make the necessary arrangements during construction to insure that [his] Engineer will have the necessary information" to certify that the concrete slab wall was constructed in accordance with the approved design," as directed by Permit #99-1180. Town Exhibit 5 and Appellant Exhibit I (emphasis added).

40.     Appellant Exhibit L (the revised site plan) includes a certification and stamp from Appellant's engineer.  However, that certification confirms that Appellant constructed a wall or walls that differ materially from the wall authorized by Permit #99-1180.  Appellant did not retain his engineer to inspect the wall during construction.  Instead, Appellant directed his engineer to complete his certifications concerning the retaining wall by relying only upon the engineer's brief site visit and Appellant's off-site representations.  For these reasons, we found the engineer's testimony and written certifications not credible and not relevant to the material factual issue: whether Appellant constructed the retaining wall in conformance with Permit #99-1180.

41.     In addition to the retaining wall, from 1999 through 2010, Appellant completed other development on the Diner and Club Parcels, including renovations and other work to the buildings on those Parcels, without permit approval and in contradiction of the Regulations.

42.     During trial, Appellant alleged that the retaining wall on his property was not a single wall, but three separate walls, labeled as walls "A," "B," and "C."  See Appellant Exhibit L. This assertion, made now well after Permit #99-1180 has expired and after the Town has commenced its enforcement action, has no factual foundation in either Appellant's designs or actual construction of the wall.

43.     Lastly, Appellant offered a partial defense to the Town's enforcement action by asserting that he has continually used the building on the Club Parcel, thereby entitling him to continue to use it as a lawful, pre-existing non-conformity.  Appellant's assertion lacks any credible factual foundation.  The evidence supplied at trial establishes the following facts which indicate that Appellant's use of the Club parcel building has been sporadic and is best characterized as abandoned:

    a. The Cascadnac Grange #507 last used the building on the Club Parcel just prior to Appellant's purchase of that property in the late 1990s.  Use of this building as a club then ceased; Appellant offered no credible evidence that the building has since been used except for his intermittent use in the last few years.  Use of the building has been abandoned on several separate occasions for more than two years.

    b. The building is in an unstable and unsafe condition.  There are voids in the foundation, which partially rests near the uncompleted, unpermitted retaining wall.  Access to the building is unsafe and difficult due to the condition of the front of the building.

c. There is no heat or electricity in the building, and the building's prior connection to the Town wastewater and water supply systems has been disconnected for years. Many windows have been broken by vandals.

d. In the thirteen years that Appellant has owned the building, he has never requested nor received a certificate of occupancy for its use. When Appellant's counsel questioned a Town official as to why he had not inspected the Club Parcel building or issued a certificate of occupancy, the Town official advised that he does not inspect abandoned buildings. That official's characterization of the building as abandoned was credible and the most accurate assessment of the building, given its condition.

44. Having abandoned the use of the Club Parcel building for over 180 days, Appellant had an obligation under Regulations § 260-54(c)(3) to apply for and receive a new zoning permit if he wished to resume a use that did not conform to the current Regulations.[10] Appellant chose not to apply for, nor did he receive, such a permit.

## VII. The Town's Claims for Relief

45. Appellant maintains that Permit #99-1180 allows him to use and develop his property in the manner in which he has used and developed it for the previous twelve years. His arguments are unfounded, since he never constructed the retaining wall on his property in compliance with that Permit.

46. The Town has expended immense amounts of staff time and resources over the course of many years in direct response to Appellant's construction of his retaining wall in contradiction with the design plans he submitted to the Town, Permit #99-1180, and his obligation to abide by the applicable Regulations.

47. Most recently, in response to Appellant's non-compliance with the directives contained in the 2010 NOV (Town Exhibit 17) and up until the time of trial, the Town has been required to spend in excess of $50,000.00, as itemized on Town Exhibit 55. This sum reflects only the amount expended for legal services provided to the Town and directly related to Appellant's non-compliance since the 2010 NOV was issued. The sum does not include the expenditures of time and resources by Town staff, including time and resources spent monitoring and responding to Appellant's most recent zoning violations. The evidence presented convincingly shows that the amount of time and resources spent by the Town staff, while not specifically itemized, was considerable.

---

[10] Regulations § 260-54 provides that a lawful, pre-existing non-conforming use is deemed abandoned if there are more than 180 days of non-use.

48.    A total of 513 days accrued from the deadline contained in the 2010 NOV for Appellant to provide confirmation of his intent to cure to the first day of trial.   Because the NOV was dated March 19, 2010, and Appellant was given seven days to confirm his intent to cure with the Town, Appellant's first day of violation was March 27, 2010.  The first day of trial was August 22, 2010.

**Discussion**

The Court, following the efforts of the parties, has attempted to present the relevant and material facts in these consolidated proceedings in an organized fashion.  This task has not been easy, as is evidenced by the Findings presented above and the nearly twelve years that this and related litigation has encompassed.  Despite this complexity, the current litigation presents us with the following basic legal questions: whether it is a violation of the Regulations for Appellant to develop his land in a way that does not conform to a previously issued permit, and whether it is a violation of the Regulations for Appellant to complete other development that is premised upon the prior work conducted in contradiction of that prior permit.  For the reasons stated below, we answer both of these questions in the affirmative, concluding that Appellant has committed serious zoning violations.

A.  **Appeal of the 2010 NOV**

The Town's Regulations provide that "[n]o land development, as defined in § 260-59, may be commenced without a permit . . . ."  Regulations § 260-4.  When a zoning permit issues, only the development specified in the permit is authorized; if a landowner wishes to conduct development other than that which is authorized by the permit, the landowner must seek an additional permit or permit amendment to do so.  Id.

Here, Permit #99-1180 authorized Appellant to construct a single retaining wall travelling along the southern and western boundaries of both Parcels, solely in the manner detailed in the design prepared by Appellant's engineer.  Both Appellant and his engineer conceded that the retaining wall Appellant actually constructed differs greatly from that design.  The various arguments and explanations Appellant offers that other work was authorized outside of that sanctioned by Permit #99-1180 has no foundation and was not credible.

The Town's engineer provided the most credible analysis of the deficiencies in the wall Appellant constructed and the risks and dangers that exist because of those deficiencies.  His

15

report was admitted as Town Exhibit 23 and provides the foundation for many of this Court's factual and legal conclusions.

It is difficult for the Court to overstate the gravity of Appellant's actions. He has constructed a wall along, on, and over the boundaries of his property that does not conform with his own design plans. The wall rises at a much steeper vertical angle than his plans require. Appellant's own engineer, when called upon to do so at trial, could not calculate the vertical angle of the wall that Appellant actually constructed. The wall includes hammered concrete slabs of varying length, width, and thickness and with uneven surfaces, the integrity of which has never been verified. The concrete slabs are stacked higher than specified in the design and in a manner so that the vertical joints between the slabs are in line, rather than offset, as directed by Appellant's engineer. The vertical joints are wide and open, larger than the engineer specified, and apparently not filled in by pea stone as required. The weight of the concrete slabs was not estimated at trial but is obviously many tons.

Because the wall was constructed along, on, and over Appellant's boundary line, any failure of the wall may cause it to topple onto adjacent Town properties and highways, and adjacent private properties and homes. Failure of the wall could cause serious property loss and personal injury, including death. The Court is at a loss to recall another zoning violation that has come before it with the potential for such great calamity.

Appellant's most recent argument is that he actually constructed three walls, not one continuous wall, and that, because of this, he is not in violation of the Regulations. This argument is unfounded. We note that the Town's enforcement action is premised upon its claims that Appellant did not construct his retaining wall in conformance with Permit #99-1180 and that none of the various applications Appellant presented provide design details for an alternate wall or walls. The wall Appellant actually constructed belies his present claim that he constructed three walls: the actual wall as constructed is clearly a single wall.

Importantly, Appellant's argument is premised upon a faulty legal analysis. He argues that since two of his three walls are located in the VR-1 District, he is not obligated to obtain a permit for them. But his legal argument here is founded upon a misinterpretation of the applicable provision in the Regulations. Regulations § 260-28(D) provides that in a residential zoning district, a permit is required for a retaining wall "when the distance between the wall and any boundary or easement line is less than twice the height of the wall." This provision

16

appears premised upon a common-sense safety precaution: if a wall that was built without a permit was to fail, at least it would be located far enough away from a boundary line so as to limit damage or injury to others. Appellant constructed his wall along, on, and over the southern and western boundary lines of his Parcels. We therefore do not need to complete the mathematical analysis to determine if Appellant's proposed walls "B" and "C" needed a permit. Since the wall (or walls) as constructed is located along, on, and over the nearest boundary line, and ranges from 10 feet to more than 30 feet high in places, the wall (or walls) is closer to the nearest boundary than its height. Appellant's wall (or purported three separate walls) was constructed in violation of Regulations § 260-28(D).

Once Appellant constructed a non-conforming retaining wall, he was the cause of the frustrations he thereafter faced when attempting to secure permits for future development of his parcels. The Town reasonably required that Appellant include in any subsequent permit applications the design and construction details for the as-built or to-be-modified retaining wall, certified by an engineer as required under the Regulations, before those applications could be considered complete. See Regulations §§ 260-28(D) and §260-51. Instead of satisfying the technical certification requirements, Appellant chose to appeal the Zoning Administrator's determinations that his applications were incomplete. Given that his applications (#12-10 and #13-10) relied upon an unpermitted retaining wall, the Zoning Administrator had a right, even a duty, to require that Appellant submit verification from an engineer that the retaining wall Appellant constructed would meet safety standards. Appellant still has not provided engineering details indicating either the integrity of the wall as constructed or a plan for modifying his wall.

### B. The Town's Claims for Injunctive Relief and Penalties

Having concluded that Appellant has committed serious zoning violations, we now consider the appropriate relief to be afforded the Town. First, Appellant must be ordered to safely remove the offending wall and all other unauthorized improvements. We reach this conclusion because Appellant has shown an inability to construct the wall as permitted. When confronted with his non-compliance, Appellant has refused to cure the deficiencies and has been unable to supply a complete, comprehendible application for either an amendment to his now-expired permit or for a new zoning permit. The Court recognizes Appellant's fortitude

and perseverance. But Appellant has shown, above all else, that he is unwilling to respect the Regulations and the public health and safety that those Regulations were enacted to protect.

We therefore conclude that Appellant must be required to either contract with a third party to remove the offending wall or remove the wall himself. Whether the work is completed by a qualified third-party contractor or Appellant, the work must be overseen by a professional engineer who is licensed by the State of Vermont and who submits weekly reports to the Town Zoning Administrator. These reports must detail the wall demolition work, starting from the day that work begins and continuing until the wall removal is complete. The work may only begin after Appellant's engineer submits a detailed plan for the work and the Town accepts or approves that plan. Once work begins, the engineer's weekly certifications must identify the work completed since his last report and any material deviations from the approved plan.

Our authority to enjoin a zoning violator derives from 24 V.S.A. § 4452, which provides that in an action brought on behalf of a municipality against a zoning violator, this Court may "prevent, restrain, correct, or abate that construction or use . . . ." Interestingly, these provisions differ from those authorizing the imposition of fines in that a municipality is not obligated to provide notice and an opportunity to cure to someone against whom the municipality is seeking injunctive relief. Compare 24 V.S.A. § 4451 with 24 V.S.A. § 4452. Thus, we are authorized to impose injunctive relief not only against Appellant, but also against Susan Wood, in her capacity as co-owner of the Club Parcel, even though she was not named in or sent the 2010 NOV.

The relief we grant to the Town here is guided by specific precedent that directs that injunctive relief is appropriate when the zoning violation is "substantial" or is the result of "conscious wrongdoing." Town of Sherburne v. Carpenter, 155 Vt. 126, 131-32 (1990). Appellant here has certainly committed serious zoning violations and has done so after repeated notices and demands from the Town that he cease his non-compliant construction. Appellant continued the construction of his non-complying retaining wall and building renovation long after receiving the Town's various notices, including the 2010 NOV. The standards authorizing injunctive relief established in Carpenter have unquestionably been met here. We therefore direct that the Woods remove the offending wall and cease all development activities on their Parcels. We specifically enjoin the Woods from conducting development on their Parcels until they have received permit authority to do so.

We now turn to the Town's request that penalties also be assessed against Appellant for his zoning violations.[11] Vermont municipalities are authorized to enforce their zoning regulations and to prosecute individuals who violate those regulations. See 24 V.S.A. §§ 4451, 4452, 4454. In addition to the injunctive relief authorized by these statutory provisions, Vermont municipalities are also authorized to demand that a zoning violator pay a fine of up to $100.00 for each day the zoning regulation continues. 24 V.S.A. § 4451(a). The municipality is required to give prior notice and an opportunity to cure of "at least seven days' warning notice by certified mail." Id. This Court is charged with determining what level of fine should be assessed against the zoning violator. Id.

Section 4451(a) provides us with some parameters for an appropriate penalty by establishing that this Court may impose a penalty of "not more than $100.00 per day for each offense." We have held that this provision implies that "we reserve a fine of $100.00 per day for the most egregious of zoning infractions." In re Huntington NOV Appeal and Town of Bradford v. Huntington, Nos. 204-8-06 Vtec and 209-9-06 Vtec, slip op. at 8 (Vt. Envtl. Ct. Mar. 18, 2008) (Durkin, J.); see also Town of Hinesburg v. Dunkling, 167 Vt. 514 (1998). Fines authorized by 24 V.S.A § 4451(a) are civil in nature; they must not be punitive and they must be "rationally related to the damages suffered from landowner's violation of [the] Town's bylaw." Id. at 528. It is beyond dispute that, in light of Appellant's persistent avoidance of his obligations to abide by Permit #99-1180 and the applicable Regulations, the Town has incurred considerable expense, including expenditures for both legal services and staff time and resources, to compel Appellant's compliance, and that Appellant's continued non-compliance puts neighboring properties and people at risk of suffering considerable damages.

As discussed above, Appellant has committed serious zoning violations and Appellant's construction of the non-conforming retaining wall and other improvements represent some of the most egregious violations this Court has witnessed. However, in light of the injunctive relief we are also imposing against the Woods, we conclude that $10.00 per day is an appropriate fine. Thus, we assess a total fine against Appellant as a consequence of his zoning violations, and the violations as represented in the 2010 NOV, of $51,300.00. This fine assessment will at least partially reimburse the Town for what Appellant caused the Town and

---

[11] We decline to impose penalties against Susan Wood, since she was not named in nor sent a copy of the 2010 NOV. We interpret 24 V.S.A. § 4451(a) as requiring those steps in order for a municipality to seek penalties against a zoning violator.

its officers to expend in public monies, time, and effort in response to his serious zoning violations.

## C. **Completeness of Applications #12-10 and #13-10**

By his Application #12-10 Appellant sought a "[p]ermit to bring [his] property into compliance with Zoning Reg's [sic] as it pertains to the Retaining Wall." Town Exhibit 18. In support of this application, Appellant attached copies of his prior site plan, dated October 1, 1998, and his engineer's design for the wall Appellant first proposed, consisting of dry-laid stone. Appellant did not construct that wall, as he readily admitted at trial. He also attached to Application #12-10 a copy of a letter from his engineer, dated March 6, 2007, in which his own engineer advised that "[t]here is a difference between the plans and the constructed wall . . . ." Town Exhibit 18.

Appellant offered no details of the wall he actually constructed nor of the corrections or modifications he intended to complete to bring his wall into compliance with the Regulations. Appellant has left the Zoning Administrator, the ZBA, and this Court to wonder what specific work he intends to perform to ensure compliance with the Regulations.

Because of the location and height of Appellant's wall, he was required to provide "certification by a professional engineer on [the wall's] design, structural stability, and construction." Regulations § 260-28(D) (requiring such certification for retaining walls more than 42 inches high). Appellant provided none of these certifications. As is authorized by Regulations § 260-51, the Town employed an engineer to conduct "an independent technical review" of Appellant's application submissions and the wall he actually constructed. That engineer provided the most credible assessment of Appellant's retaining wall and confirmed that Appellant's current applications (both Applications #12-10 and #13-10) fail to provide the necessary certifications and specifications that would ensure that whatever wall Appellant hoped to complete would be safe and in compliance with the Regulations. We conclude that Appellant's Application #12-10 is materially deficient. The Zoning Administrator was obligated to deem this application incomplete and return it to Appellant.

We reach a similar conclusion as to Application #13-10. Appellant's plans to develop the Diner Parcel for single-family use rely upon the wall that he has already constructed on that Parcel. That wall violates the Regulations and does not comply with Permit #99-1180, which had expired at the time Appellant submitted Application #13-10. When Appellant submitted

this application, he failed to provide any of the engineer certifications and design specifications for the wall he had actually built or for the wall as modified by work he intended to complete. As the Zoning Administrator properly concluded, no development may be allowed on the Diner parcel, or either of the Woods' Parcels for that matter, without Appellant first providing the necessary engineering designs and certifications concerning the retaining wall. We conclude that Appellant's Application #13-10 is materially deficient. The Zoning Administrator was obligated to deem this application incomplete and return it to Appellant.

## Conclusion

Accordingly, based on the foregoing, the following is hereby **ORDERED** and **ADJUDGED**:

A. Marc Wood's applications to bring his retaining wall on the Club Parcel into compliance (Application #12-10) and to develop a single-family dwelling on the Diner Parcel (Application #13-10) are incomplete, since neither application includes the necessary engineering details or design specifications for his retaining wall, either as actually constructed or as proposed, and neither application includes the necessary certifications by a Vermont licensed engineer. We therefore **DEEM BOTH APPLICATIONS INCOMPLETE**.

B. The notice of alleged zoning violations, dated March 19, 2010 and served upon Marc Wood by the Town of Hartford Zoning Administrator, has a sufficient factual and legal foundation and is therefore **UPHELD**. As a consequence of committing the zoning violations evidenced by the 2010 notice of violations, Marc Wood shall pay to the Town of Hartford penalties in the total amount of **$51,300.00**.

C. As a consequence of the zoning violations they committed or allowed to be committed on their Diner and Club Parcels, Marc and Susan Wood are hereby **ORDERED** to immediately cease all construction activities and other development on their Parcels and not begin any development on those Parcels without first consulting with the Town of Hartford Zoning Administrator to determine if a zoning permit is required for their proposed activities. If a permit is necessary, Marc and Susan Wood cannot begin such development without first submitting a complete application for a zoning permit to the Town of Hartford Zoning Administrator or the appropriate municipal panel and receiving the necessary permits. Any future development on these Parcels shall only occur in strict conformity with any issued and outstanding zoning permits.

D. Marc and Susan Wood shall remove the retaining wall located on the Diner and Club Parcels, and all other unauthorized improvements on these Parcels, either themselves or by hiring a qualified third-party contractor to do so. In the event that either Marc or Susan Wood, or the both of them, conduct this removal work themselves, they shall hire a professional engineer, licensed by the State of Vermont, to conduct daily inspections of all the work they conduct. Whether the

Woods conduct the removal work themselves, or hire a qualified third-party contractor to do so, thye must also hire a Vermont licensed professional engineer to file weekly reports with the Town of Hartford Zoning Administrator, detailing and certifying the removal work conducted each week until such work is complete. Such certifications shall specify the work completed since any prior certification and disclose any material deviations from any engineering plans approved by the Town.

E. Prior to beginning the removal work directed in ¶ D, above, Marc and Susan Wood shall cause a Vermont licensed professional engineer to submit to the Zoning Administrator a plan for the safe removal of the wall and unauthorized improvements on the Diner and Club Parcels as well as a bank stabilization plan that will dictate necessary safety precautions to be taken both during the removal period and after removal. Both of these plans must be submitted, in writing, to the Town of Hartford Zoning Administrator thirty days after the engineer is selected in accordance with ¶¶ F and G, below. The removal work directed in ¶ D, above, must be completed in conformance with these plans and cannot commence until thirty (30) days after receipt of the plans by the Zoning Administrator or until the Town approves such plans (whichever date is later), as described in ¶ H, below.

F. The engineer whom the Woods employs for all of the work directed in ¶¶ D and E, above, is subject to the approval of the Town. If the parties are unable to agree on the engineer to be employed, each party shall submit the names and resumes of one or more engineers acceptable to them to the Court and the Court will thereafter select the engineer that the Woods shall employ to complete this work.

G. Marc and Susan Wood shall submit to the Town of Hartford Zoning Administrator the name and resume of the engineer they wish to employ for all of the work directed in ¶¶ D and E, above, within thirty (30) days after the Judgment Order that accompanies this Decision becomes final. If it wishes to do so, the Town shall then have fifteen (15) days to give written notice to the Woods of its rejection of their engineer. If the Town provides a timely notice of its rejection of the Woods' engineer, an engineer shall be selected pursuant to ¶ F, above.

H. The Town shall have thirty (30) days from its receipt, as directed in ¶ E, above, of the engineer's plans to give written notice to Marc and Susan Wood and their engineer of any concerns or objections to such plans. The lack of such written notice from the Town shall constitute its approval of the plans. If the Town raises concerns about or objections to the plans, Marc and Susan Wood shall work with the Town to resolve the issues in a timely fashion and to adjust the plans, if necessary, so that the Town is able to approve them. If the parties are unable to resolve any material disagreement as to the design plans, the parties shall submit their disagreement for resolution by the Court.

I. The engineer's plans required in ¶ E, above, shall specify a reasonable period of time for the removal and bank stabilization work to begin and be completed. In the event that the engineer specifies more than sixty (60) days, the engineer must specify the reasons for the delay.

J.  Once all work is completed, Marc and Susan Wood shall employ the engineer to conduct the necessary final site inspections so that the engineer may certify to the Town and this Court that all work necessary for the removal of the retaining wall and unpermitted improvements is complete and the resulting earthen bank is stable.

This completes the current proceedings before this Court.  A V.R.C.P. 58 Judgment Order accompanies this Decision.

Done at Berlin, Vermont, this 22nd day of February, 2012.


_____
Thomas S. Durkin, Environmental Judge